## Inheritance Tax on Illegitimates

GORNISH, *Acting Attorney General,* YAKO-WICZ, *Solicitor General,* June 30, 1978—We have been requested to issue an opinion on the constitutionality of the differential inheritance tax rates applied to legitimate and illegitimate children inheriting from and through their fathers.

The relevant statutory provisions are as follows:

Section 403 of the Pennsylvania Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, as amended, 72 P.S. §2485-403, provides:

"Inheritance tax upon the transfer of property passing to or for the use of any of the following shall be at the rate of six (6) percent:

"(1) Grandfather, grandmother, father, mother, husband, wife, and lineal descendants . . ."

Section 102(3), 72 P.S. §2485-102(3), provides: "'Children' includes adopted children, stepchildren, *illegitimate children of the mother,* and the children of the natural parent who are adopted by his spouse. *It does not include illegitimate children of the father* or adopted children in the natural family, except as above set forth." (Emphasis supplied.)

Section 102(13), 72 P.S. §2485-102(13), provides: "'Lineal descendants' includes children and their descendants, adopted descendants and their descendants, stepchildren, *illegitimate descendants of the mother* and their descendants, and children and their descendants of the natural parent who are adopted by his spouse. It does not include descendants of stepchildren, *illegitimate children of the father* and their descendants, or adopted children and their descendants in the natural family, except as above set forth." (Emphasis supplied.)

Section 404 of the Pennsylvania Inheritance and Estate Tax Act of June 15, 1961, 72 P.S. §2485-404, provides: "Inheritance tax upon the transfer of property passing to or for the use of all persons other than those designated in section 403, shall be at the rate of fifteen (15) percent."

Pursuant to these sections of the act, illegitimate children of the mother inherit as children and as lineal descendants of the mother. They are taxed on such inheritance at the rate of six percent.

Illegitimate children of the father are excluded as

children and as lineal descendants of the father. They are taxed on such inheritance at the rate of 15 percent.

We shall discuss the recent evolution of the law with respect to the constitutionality of discriminatory provisions against illegitimates.

In Labine v. Vincent, 401 U.S. 532, 538 (1971), the guardian of an illegitimate minor child attacked the constitutionality of Louisiana's laws which bar an illegitimate child from sharing equally with legitimates in the estate of their father who had publicly acknowledged the child. The guardian argued that the statutory scheme for intestate succession that bars this illegitimate child from sharing in her father's estate constitutes an invidious discrimination against illegitimate children and contravenes the rights established under the Due Process and Equal Protection Clauses of the Constitution.

The Supreme Court noted that even if they were to apply the "rational basis" test to the Louisiana intestate succession statute, that statute clearly has a rational basis in view of Louisiana's interest in promoting family life and of directing the disposition of property left within the state. The court states: ". . .[T]he power to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property left in Louisiana by a man dying there is committed by the Constitution of the United States and the people of Louisiana to the legislature of that State. Absent a specific constitutional guarantee, it is for that legislature, not the life-tenured judges of this Court, to select from among possible laws."

The court concluded by holding that ". . . there is nothing in the vague generalities of the Equal Protection and Due Process Clauses which empowers

this Court to nullify the deliberate choices of the elected representatives of the people . . ."

Thirteen months after Labine v. Vincent the question before the United States Supreme Court concerned the right of dependent, unacknowledged, illegitimate children to recover benefits under Louisiana workmen's compensation laws for the death of their natural father on an equal footing with his dependent, legitimate children: Weber v. Aetna Casualty & Surety Co., 406 U.S. 164 (1972). The court held that there was inequality of treatment under the statutory scheme which constituted impermissible discrimination against the illegitimate children and violated the Equal Protection Clause of the Fourteenth Amendment.

In its reasoning and analysis the court stated:

"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where—as in this case—the classification is justified by no legitimate state interest, compelling or otherwise." 406 U.S. at 175.

Labine was distinguished on the basis that it reflected the traditional deference to a state's prerogative to regulate the disposition at death of property within its borders; that the court has long afforded broad scope to state discretion in this area; and the substantial state interest in providing for the stability of land titles and in the prompt and definitive determination of the valid ownership of property left by decedents was absent in the case of Weber.

In Gomez v. Perez, 409 U.S. 535 (1973), the issue presented was whether the laws of Texas may constitutionally grant legitimate children a judicially enforceable right to support from their natural fathers and at the same time deny that right to illegitimate children. The court held that the Texas law violates the Equal Protection Clause of the Fourteenth Amendment and went on to state: *"We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made an impenetrable barrier* that works to shield otherwise invidious discrimination." 409 U.S. at 538. (Emphasis supplied.)

Apparently the Supreme Court was concerned with and recognized the serious problems of fraud in claims of paternity, and inferentially recognized the rights of states to establish and require strict standards of proof of paternity, for the above quote of the per curiam opinion is gratis dictum. The state trial judge had found as a fact that defendant was the "biological father" of plaintiff and proof of paternity does not appear to have been in issue on appeal.

In Jimenez v. Weinberger, 417 U.S. 628 (1974), the Secretary of HEW denied claims of a subclass of

illegitimates pursuant to the Social Security Act. The court, while recognizing that prevention of spurious and fraudulent claims is a legitimate governmental interest, held that "the blanket and conclusive exclusion of appellants' subclass of illegitimates" contravenes equal protection guaranteed by the Due Process Clause of the Fifth Amendment.

Trimble v. Gordon, 430 U.S. 762 (1977), involved the Illinois Probate Act which allows illegitimate children to inherit by intestate succession only from their mothers. During his lifetime, the court entered a paternity order finding Gordon to be the father of Deta Mona Trimble and ordered him to pay support. Gordon thereafter supported Deta Mona in accordance with the paternity order and openly acknowledged her as his child. He later died intestate.

The Illinois courts excluded Deta Mona from inheriting his estate on the basis of the Probate Act. The United States Supreme Court, in a 5 to 4 decision, held that the statutory discrimination against illegitimate children was unconstitutional. The court concluded that the adjudication of paternity in the support action should be equally sufficient to establish the right to claim a child's share of the estate "for the State's interest in the accurate and efficient disposition of property at death would not be compromised in any way by allowing her claim in these circumstances."

The majority with respect to the Labine case stated:

"In subsequent decisions we have expressly considered and rejected the argument that a state may attempt to influence actions of men and women by imposing sanctions on the children born of their illegitimate relationships."

Because of the importance of the decision in Trimble v. Gordon, we extensively quote therefrom:

"The Illinois Supreme Court relied on Labine for another and more substantial justification: the State's interest in 'establish[ing] a method of property disposition.' 61 Ill. 2d, at 48, 329 N.E. 2d, at 238. Here the Court's analysis is more complete. Focusing specifically on the difficulty of proving paternity and related danger of spurious claims, the court concluded that this interest explained and justified the asymmetrical statutory discrimination against the illegitimate children of intestate men. The more favorable treatment of illegitimate children claiming from their mothers' estates was justified because 'proof of a lineal relationship is more readily ascertainable when dealing with maternal ancestors.' [61 Ill. 2d] at 52, 329 N.E. 2d, at 240. Alluding to the possibilities of abuse, the court rejected a case-by-case approach to claims based on alleged paternity. Id, at 52-53, 329 N.E. 2d, at 240, 241.

"The more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally. We think, however, that the Illinois Supreme Court gave inadequate consideration to the relation between §12 and the State's proper objective of assuring accuracy and efficiency in the disposition of property at death. The court failed to consider the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity. For at least some significant categories of il-

legitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws. Because it excludes those categories of illegitimate children unnecessarily, §12 is constitutionally flawed.

"The orderly disposition of property at death requires an appropriate legal framework, the structuring of which is a matter particularly within the competence of the individual States. In exercising this responsibility, a State necessarily must enact laws governing both the procedure and substance of intestate succession. Absent infringement of a constitutional right, the federal courts have no role here, and, even when constitutional violations are alleged, those courts should accord substantial deference to a State's statutory scheme of inheritance.

"The judicial task here is the difficult one of vindicating constitutional rights without interfering unduly with the State's primary responsibility in this area. Our previous decisions demonstrate a sensitivity to 'the lurking problems with respect to proof of paternity,' Gomez v. Perez, 409 U.S. 535, 538 (1973), and the need for the States to draw 'arbitrary lines . . . to facilitate potentially difficult problems of proof,' Weber, 406 U.S., at 174. 'Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination.'"

In Browning Estate, 28 Fiduc. Rep. 1 (1977), an alleged illegitimate son of the decedent claimed an intestate share of the estate. Placed into evidence

was a certified copy of a common pleas court order in connection with a fornication and bastardy proceeding against defendant-decedent and in favor of the claimant born out of wedlock.

Applying the constitutional concepts expressed in Trimble v. Gordon, the court in Browning Estate held the evidence sufficient to establish the illegitimate's claim and held section 2107 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §2107, unconstitutional in that it violates the Fourteenth Amendment of the United States Constitution.

Pursuant to these decisions of the courts, it is our opinion and you are so advised that:

(1) The state legislature and/or the department of revenue may require reasonably exacting standards of proof for a person to establish that he or she is the biological illegitimate child or lineal descendant when claiming from or through the father.

(2) In such cases where the standard of proof is met and established, the Pennsylvania Inheritance and Estate Tax Act of 1961 is unconstitutional in that it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by invidiously discriminating on the basis of illegitimacy insofar as it imposes a higher rate of tax in the amount of 15 percent.